**WAGNER v. KEMPER et al.**

No. 7617.

United States District Court
W. D. Missouri, W. D.

May 9, 1953.

Wm. H. Armstrong and Bourne Bean, of Cobbs, Blake, Armstrong, Teasdale & Roos, St. Louis, Mo., Stinson, Mag, Thomson, McEvers & Fizzell, by Dick H. Woods, Kansas City, Mo., for plaintiffs.

Edgar Shook and Lane D. Bauer, Kansas City, Mo. (Sebree, Shook, Hardy & Ottman, Kansas City, Mo., of counsel), for I. J. Leopold, Amicus Curiae.

Charles E. Whittaker and Elton L. Marshall, Kansas City, Mo., for Pickering Lumber Corp. and for defendant Trustees.

Hugh M. Hiller, Kansas City, Mo., for defendant Commerce Tr. Co.

REEVES, Chief Judge.

Several contentions have been made in the above case. Counsel on both sides and for the amicus curiae have made prolonged arguments and have filed voluminous briefs.

The purpose of the suit is in effect to dissolve a Voting Trust Agreement heretofore entered into by stockholders of Pickering Lumber Corporation and to replace the present Voting Trust Certificates with the underlying stock, and to afford each and every Voting Trust Certificate holder an opportunity to replace his Voting Trust Certificate with the underlying stock. As a basis for such request it is charged that the trustees of the Voting Trust "have breached the Voting Trust Agreement."

Extensive exhibits attached to the complaint have been examined. It appears therefrom that, in the exercise of sound business judgment at the time the Pickering Lumber Corporation was reorganized, as set forth in the pleadings, a Voting Trust arrangement was made in the interest of all security holders, including those holding shares of common stock and those holding shares of preferred stock. The Voting Trust Agreement thus entered into continued for a period of ten years from April 1, 1937. At the end of the period it was deemed wise, in the exercise of sound business judgment, to continue the Voting Trust Agreement, and the question as to whether it should be continued was submitted to the holders of Voting Trust Certificates. An overwhelming majority approved a continuance of the Voting Trust arrangement.

Apparently the company prospered, and in 1950 it was proposed to amend the charter of the company so as to afford to the then shareholders twice the number of shares then held by them but with reduced par value. The Board of Directors, not the Trustees of the Voting Trust, proposed such an amendment. It was not deemed proper for the Voting Trustees to approve such an amendment as their authority therefor was considered inadequate. Thereupon the question of amending the charter of the corporation in the manner indicated was submitted to the Voting Trust Certificate holders. They approved. And the Voting Trustees were given authority and power not theretofore possessed by them. With the approval of the Voting Trust Certificate holders the charter was amended and stock issued conformable to the action of the Board of Directors, the Trustees, and the Voting Trust Certificate holders. The trustees then, by authority of the Board of Directors, and as approved by the Voting Trust Certificate holders, began issuing

new Voting Trust Certificates upon the surrender of those outstanding.

The attention of the Trustees was then called by the Securities and Exchange Commission to a legal requirement of the Securities and Exchange Commission, and that some proper action should be taken to remedy the oversight. In an effort to comply with the requirement of the Securities and Exchange Commission, the Voting Trustees permitted the withdrawal of a few certificates from the trust. Apparently they were required to do this by order of the Securities and Exchange Commission. It should be borne in mind that their actions which brought about a conflict with the Securities and Exchange Commission (if there was a conflict) was authorized by the Voting Trust Certificate holders.

The plaintiffs, as Voting Trust Certificate holders, now complain that such action breached the contract and that same should be dissolved and annulled. And they claim the jurisdiction of this court upon the theory that their securities are imperiled and impaired and that such peril and impairment justify federal jurisdiction.

The trustees, after denying the averments of the complaint, challenge the jurisdiction of the court upon the ground that the amount in controversy is inadequate. According to a preponderance of the testimony, the over-counter market for the securities of the Pickering Lumber Corporation was identical as between the Voting Trust Certificates and the original or underlying stock. Moreover, it appears that the management and control of the corporation is wholly unchanged by the issuance of original stock in a few instances to replace Voting Trust Certificates. The corporation is proceeding precisely as it did before, under the same control. No averments of the complaint indicate any act of the trustees that would in any way mar or imperil the securities held by them. The amicus curiae is the holder of so-called "free-stock." It is argued by able counsel for him that if all the stock were "freed", his stock would be more influential in the operation of the company. Such, of course, is not true.

He might be able, in connection with other stockholders, to bring about a change of management, but there is nothing in the record to show that the present management is inefficient, indifferent, or inattentive to the best interests of the company.

In view of the above, and without regard to the merits of the case, it does not appear that the amount in controversy is sufficient to confer jurisdiction upon this court, and, accordingly, the motion to dismiss will be sustained.